## Boylan v. Carbondale Transfer Company

*J. G. McDonough*, for plaintiff.
*Frank M. Walsh*, for defendant.

HOBAN, J., March 12, 1937.—This is an action of trespass for personal injuries incurred by plaintiff while a passenger in and about to alight from a taxicab operated by defendant company. Trial was had before Hoban, J., and a jury, resulting in a verdict for plaintiff. At the trial appropriate motions for a compulsory nonsuit and subsequently for binding instructions in favor of defendant were made, and the matter now comes before the court on motion for judgment non obstante veredicto. The position of defendant is that plaintiff did not offer testimony sufficient to justify a finding of actionable negligence, and, even if there were such actionable negligence, plaintiff did not make out a case as a matter of law free from contributory negligence.

Giving plaintiff the benefit of every fact and inference of fact reasonably deducible from the testimony in his favor, the pertinent facts are as follows: At eleven o'clock in the evening of February 20, 1936, plaintiff, ac-

companied by Miss Rose Loftus, entered a taxicab operated by defendant company, proceeded to the house of Miss Loftus, where both parties alighted and defendant accompanied Miss Loftus into her home. A few minutes thereafter he reëntered the taxicab and was driven to his own home, and, while he was attempting to alight from the taxicab at his own home, the accident happened which resulted in the damages complained of. The peculiar circumstances surrounding this injury are to be noted with care. When plaintiff first entered the cab he did so at a station in the City of Carbondale where cabs were habitually secured by patrons of the company. Miss Loftus entered the cab first and sat on the left-hand side. Plaintiff then entered the cab and sat on the right-hand side. When they alighted at Miss Loftus' home, plaintiff left the cab first on the right-hand side. While he accompanied Miss Loftus into her house the taxicab went up the street, turned around, and returned facing in the direction from which it had just been driven, so that when plaintiff reëntered the cab he did so by the left-hand rear door, and thereupon sat on the left side of the rear seat. When the cab drew up at his home, it did so with the right side nearest the curb. As Mr. Boylan got up and prepared to alight, he necessarily moved from the left side of the cab over toward the right and when so doing tripped over an obstruction in the middle of the floor of the cab, causing the fall which resulted in his injury. At no time during his use of the cab on the evening in question was a light exposed in the passenger compartment of the cab, and, under plaintiff's testimony, he did not see, nor was he able because of the darkness to see the obstruction over which he tripped.

This so-called obstruction consisted of a semicircular housing approximately 6 inches wide and 3½ inches high, passing from front to rear along the center of the floor in the rear compartment of the automobile, underneath which the drive shaft of the automobile transmitting the

power from the engine to the rear wheels was contained. The housing, of course, was covered over by the usual floor cloth or mat. This construction is a familiar one with certain types of cars and in itself certainly cannot constitute a dangerous structure or one which could not be readily observed if the passenger had entered the car in daylight, or if a light had been exhibited in the passenger compartment at night.

The defendant is a public carrier and so subject to the rules of liability for negligence and the standard of care to which common carriers are held by law.

"The injured plaintiff was a passenger for hire in the taxicab, and the Transportation Company owed to her the highest degree of care and diligence in carrying her to her destination and enabling her to alight safely": Hughes et ux. v. Pittsburgh Transportation Co. et al., 300 Pa. 55.

Since a carrier does not insure the safety of its passengers, an injured passenger in order to recover damages must prove that the carrier has been negligent, that is to say, that plaintiff's injury must have occurred because of the failure of defendant to exercise the care and diligence required of it in carrying him to his destination: Bickel v. Reed, 118 Pa. Superior Ct. 335. Nor is there any presumption of negligence on the part of the carrier simply because an accident happened, or because some part of the equipment had a part in the occurence. Injuries to patrons of common carriers occur through failures or defects in equipment or negligent operation on the part of employes. In the instant case, since the particular type of construction used is not in our view inherently dangerous, nor was there any proof that there was any defect in the machinery used, the negligence, if any, must have been in the operation, to wit, in the conduct of the driver of the car. Did he fail in any way to do everything he should have done in order to secure to his passenger the "highest degree of care and diligence

in carrying him to his destination and enabling him to alight safely", to which the passenger was entitled?

Under the proofs, we think the answer to this question must be in the affirmative. It is obvious that a passenger, not knowing of the existence of the drive shaft housing, could fall over the same in his moving from one side of the car to the other; in other words, the possibility of the event which happened here is proved by its occurrence, so that such an event must have been foreseeable. If it was foreseeable, there was a duty to avoid it. It could have been avoided, so far as the passenger was concerned, in either or both of two ways, to wit, a warning by the driver of the car to the passenger, or the exposition of the obstruction to the view of the passenger. The testimony in this case is that neither warning nor exposition to view was afforded to plaintiff, and we think this proof is sufficient to justify the inference of negligence.

As to the matter of contributory negligence, the only proof from which such negligence could have been inferred is that this plaintiff prior to this accident had been a habitual user of taxicabs of this defendant and was familiar with the construction of other cars of the same make as the taxicab in question. Therefore, he knew, or should have known, of the obstruction in the center of the floor of this particular automobile. But in plaintiff's case in chief there were no facts from which a knowledge of the existence of the obstruction could have been inferred, or from which the court could state as a matter of law that plaintiff was charged with the duty of observing this obstruction as a thing within his vision or which he should have seen. In fact, plaintiff's testimony was to the effect that he did not know or notice the particular type of automobile which he was entering, and that all during his journey he was unable to see, nor did his feet come in contact with this obstruction until the moment of alighting. On such testimony we believe that the matter of contributory negligence was for the jury.

Under all the circumstances, we believe that sufficient testimony was presented from which the jury could find that there was actionable negligence on the part of the defendant corporation through its servant, the driver of the taxicab, which negligence was the proximate cause of the injury to plaintiff, and that the matter of contributory negligence was one of fact for the jury under proper instructions of the court, which were duly given.

Now, March 12, 1937, the rule to show cause why judgment should not be entered in favor of defendant notwithstanding the verdict in the above-entitled case is discharged.