Opinion by
 

 Stadtfeld, J.,
 

 This is an action of assumpsit by Benjamin J.
 
 *590
 
 Thomas, Administrator of the estate of Gwendolyn Thomas, deceased, against Metropolitan Life Insurance Co., to recover upon an industrial life insurance policy on the life of Gwendolyn Thomas issued on August 12, 1935. The assured died on June 17, 1936.
 

 The defendant insurance company defended the claim, alleging breach of certain conditions of the policy with reference to condition of health and previous medical treatment of the assured. The litigation centers around the following provision of the insurance policy: “If (1) the Insured......is not in sound health on the date of issue hereof; or if (2) before the date of issue hereof the Insured......has within two years before the date of issue hereof, been attended by a physician for any serious disease, or complaint, or before said date of issue has had any pulmonary disease or chronic bronchitis or cancer, or disease of the heart, liver, or kidneys, unless such ......medical attention or previous disease is specifically recited in the ‘Space for Endorsements’ on the fourth page in a waiver by the Company ......then, in any such case, the Company may declare this policy void.” There was no special endorsement on the policy.
 

 The contentions of defendant were as follows: (1) that the assured had tuberculosis at the time of the issuance of the policy; (2) that the assured had myocarditis at the time of the issuance of the policy; (3) that in December of 1934, the assured had an attack of appendicitis and this fact was not shown by endorsement on the policy; (4) that the insured was not in good health at the time of the issuance of the policy.
 

 The trial judge submitted to the jury questions (1), (2) and (4) and as to question (3) whether the attack of appendicitis was “a serious disease or complaint” within the meaning of the policy. A request for binding instructions was refused and a verdict rendered in favor of plaintiff for $325, the, face of the policy, and in
 
 *591
 
 terest thereon. A motion for judgment non obstante veredicto was overruled in an opinion by Chambees, P. J., and judgment entered on the verdict. This appeal followed.
 

 At the trial of the case, plaintiff put in evidence the policy of insurance with proof of payment of premiums and the furnishment of proof of death as required under the policy and rested.
 

 The defendant established that in connection with the claim made on the policy, the plaintiff furnished a statement of Dr. Paris A. Shoaff in connection with the proofs of death. This statement sets forth that in April, 1935, he treated the insured for myocarditis. The doctor was also called as a witness on behalf of defendant and testified that he first saw the assured on March 27, 1935 and that she made four subsequent visits between said date and May 13 of the same year; that he made an examination of her and diagnosed her condition as myocarditis but did not inform her of his findings; that he considered the condition serious and permanent. In rebuttal, Benjamin Thomas, husband of the deceased, testified that Dr. Shoaff did treat his wife at one time and gave her a tonic or prescription for a “run-down condition,” but that, according to his recollection, although he was not certain as to dates, was after the issuance of the policy.
 

 Defendant also showed that in connection with the proof of death and as a part thereof, was a statement of Dr. O. F. Flannery, which set forth, inter alia, that in December, 1934, he had treated the insured for an attack of appendicitis and also for gastro-intestinal conditions in April, 1934; that the duration of the appendicitis attack was only twenty-four hours. This statement does not show any heart trouble, although this doctor’s treatment- was during substantially the same period that she was treated by Dr. Shoaff. The statement further set forth that the cause of death was pul
 
 *592
 
 monary and laryngeal tuberculosis and the duration of the disease from his personal knowledge was one year and six months. The doctor was also called as a witness on behalf of defendant and testified that he did not reach a definite conclusion as to the condition of tuberculosis until November of 1935, and that he would not be able to state how long the disease had existed; that he had not seen her from February until November of 1935.
 

 In December of 1935, the assured was sent to the Cresson State Sanitarium where she died in June, 1936. Dr. Louis A. Wesner, a physician at the sanitarium, in his statement attached to the proof of death, sets forth as the cause of death, “Pulmonary tuberculosis. Duration from history given, 6 months, 5 days. Contributory or secondary, none.”
 

 Appellant contends that the admissions contained in the proofs of death were documentary evidence establishing breaches of the conditions of the policy, which would warrant the court in entering judgment n. o. v., and that the admissions were not contradicted or so explained as to put in issue before the jury, the question that the alleged breaches of conditions in fact occurred. With this we cannot agree. All of the doctors agree that the cause of death was tuberculosis. Dr. Shoaff does not attempt to state the duration of this disease. He does set forth that he visited her last on December 9, 1935 and at that time she had been ill two weeks. Dr. Wesner gives the length of the illness as six months and five days. It is true that in the statement signed by Dr. Flannery, he gives the duration of the disease as one year and six months, but when testifying in court, he said his first knowledge of the presence of tuberculosis was in November of 1935 and that he could not tell for how long the disease had been present before that. The record, therefore, does not establish that the
 
 *593
 
 deceased was suffering from tuberculosis when the policy was taken out on August 12,1935. As to tbe attack of appendicitis, tbe testimony showed that it lasted for only twenty-four hours, and no operation was necessary. The question whether this was a serious disease or complaint was properly submitted to the jury.
 

 The evidence of myocarditis, or heart trouble, depended on the testimony of Dr. Shoaff alone and, being oral testimony, had to be submitted to the jury. Likewise the question of good health. The plaintiff offered evidence to show that while the deceased was in a rundown condition after the appendicitis attack and, while she did consult Dr. Shoaff in the spring of 1935, she had improved in health and during the summer of that year she was strong and robust. She was able to do her household work as well as work in the garden and her trouble did not develop until during the month of October of 1935.
 

 As stated in
 
 Barnes v. Fidelity Mutual Life Assn.,
 
 191 Pa. 618, 623, 43 A. 341: “The term ‘good health,’ when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system.”
 

 As stated in
 
 Clemens v. Metropolitan Life Ins. Co.,
 
 20 Pa. Superior Ct. 567, 572: “Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health.”
 

 We believe that under the testimony as presented, the plaintiff’s right to recover was properly left to the jury, and that defendant was not entitled to binding instructions or judgment non obstante veredicto. The action of the lower court is fully sustained by the case of
 
 Evans v. Penn Mutual Life Ins. Co.,
 
 322 Pa. 547, 186 A. 133, wherein Mr. Justice Drew in a very comprehen
 
 *594
 
 give opinion discusses the principles applicable to the present case. We quote therefrom as follows, at p. 560: “But whenever disputed questions of fact are presented by conflicting evidence, whether documentary or oral, or whenever the insurer’s defense depends upon the testimony of its witnesses, even though such testimony is uncontradicted, the case must be submitted to the jury, subject to the trial court’s power to award a new trial as often as in its sound discretion it may think the interests of justice require.” See also
 
 Horsfield, Exrx., v. Metropolitan Life Ins. Co.,
 
 124 Pa. Superior Ct. 458, 189 A. 892;
 
 McKown v. State Mutual Life Ins. Co.,
 
 127 Pa. Superior Ct. 117, 191 A. 621;
 
 Zenner v. Goetz,
 
 324 Pa. 432, 188 A. 124;
 
 Osche v. N. Y. Life Ins. Co.
 
 324 Pa. 1, 187 A. 396.
 

 Under appellant’s fourth assignment of error, appellant contends that the court below erred in admitting testimony that the local manager of defendant company knew matters voiding the policy at the time the same was issued. The testimony referred to is that Mrs. Thomas, the insured, had told Mr. Blaha, manager of the New Castle office of the defendant company at the time that she had been treated by Dr. Flannery for an attack of appendicitis and that Mr. Blaha used certain language indicating that this made no difference. After the testimony had been received, defendant’s counsel failed to follow this up Avith a motion to strike out the evidence thus received. The trial court, however, instructed the jury to disregard the testimony, having decided that its admission was erroneous. We do not believe that appellant is now in position to complain of the testimony so received.
 
 Forster v. Rogers Bros.,
 
 247 Pa. 54, 63, 93 A. 26;
 
 Bickel v. Reed,
 
 118 Pa. Superior Ct. 335, 338, 179 A. 762.
 

 Under the fifth assignment of error, appellant contends that the court erred in refusing to admit admissions in the pleadings without the qualifications at
 
 *595
 
 tached to such admissions. The matters involved in defendant’s offer appeared elsewhere in the case in documentary form in Dr. Flannery’s proof of death and in the oral testimony of plaintiff. The matters involved were not controverted. There was, therefore, no prejudicial error, if any at all.
 

 The assignments of error are overruled and judgment affirmed.